# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OPERATIVE PLASTERERS &** | : | **CIVIL ACTION** |
| **CEMENT MASONS INTERNATIONAL** | : | |
| **ASSOCIATION LOCAL NO. 8 et al.,** | : | |
| | : | |
| | : | |
| **v.** | : | **NO. 15-0486** |
| **ATLANTIC 3 CONSTRUCTION CO.,** | : | |
| **INC. et al.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                          **FEBRUARY 29, 2016**

A competent adult business person signing a commercial document allowing his company's creditor to immediately confess judgment against him individually evidences consent to personal liability on a judgment note when the unambiguous note repeatedly refers to his <u>personal</u> liability even if he only signed the judgment note in his corporate capacity. Although the creditor inexplicably failed to include a signature line on the judgment note evidencing the individual liability for the debtor's owner, the judgment note repeatedly and consistently evidences the owner's personal liability for his company's debt obligation to the creditor. He cannot create a *genuine* issue of material fact to deprive a judgment against him to which he knowingly assented. Following discovery, his only possible defense is he did not sign the judgment note in his individual capacity but he did sign the judgment note which repeatedly confirms his personal liability. He also signed a warrant to confess judgment against him. As such, we grant the creditors' motion for summary judgment and deny the individual owner's cross-motion in the accompanying Order.

## I.    Undisputed Facts[1]

Plaintiffs here are the Operative Plasterers & Cement Masons International Association Local No. 8 (the "Union"), its various funds, including health and welfare and pension funds ("Funds") [2], and Thomas Kilkenny, Trustee, Plasterers Local 8 Benefit Funds ("Kilkenny") [3] (collectively "Creditors").  Defendant is Joseph Messa ("Messa"). Messa is the sole owner of Defendant Atlantic 3 Construction Co., Inc. ("Atlantic 3").[4]

The parties agree on all but one issue of material fact; whether Messa signed, individually, a Judgment Note and Warrant of Attorney to Confess Judgment making him personally liable for the monies owned by Atlantic 3 to the Union.  Aside from this question, the parties do not dispute, except where noted, the following facts.

Union and Atlantic 3 entered into a collective bargaining agreement ("CBA") effective May 1, 2012 to April 30, 2015.[5]  Under the CBA, Atlantic 3 paid wages and fringe benefits to Union's Funds for employees covered by the CBA.[6]

By February 2014, Atlantic 3 owed the Union $52,896.83 in unpaid contributions under the terms of the CBA ("Total Debt").[7]  Messa, on behalf of Atlantic 3, negotiated a Judgement Note with Kilkenny addressing Atlantic 3's delinquent contributions to Union Funds.[8]  On February 20, 2014, Atlantic 3, through Messa, signed a Judgment Note agreeing to the repayment of the Total Debt in eight monthly installments beginning February 21, 2014 in the amount of $6,686.70.[9]  There is no dispute Messa signed the Judgment Note on behalf of Atlantic 3.[10]

The Judgment Note contains recital provisions.[11]  The first recital identifies Atlantic 3 as the "Employer" obligated to make payments to the Union's Funds.[12]  Another recital provision states: "Whereas, the Owner of the Employer, Joseph Messa, wishes to guarantee this debt,"

2

referring to the Total Debt.[13] The operative provisions begin with: "Now, Therefore, intending to be legally bound, and for good and valuable consideration, the undersigned Employer, and Owner, Joseph Messa, (collectively the "Employer") hereby agree, jointly and severally," to terms in the following operative provisions.[14]      The Judgment Note is signed "Joseph Messa PM" on a signature line below "On Behalf of the Employer Atlantic 3 Construction Co., Inc."[15]

The Judgment Note contains a paragraph requiring "Employer," defined as Atlantic 3 and Messa, to execute a Warrant of Attorney to Confess Judgment ("Warrant of Attorney") to secure payment of the amounts owed to the Funds under the Note.[16]  The Warrant of Attorney, attached to the Judgment Note, and executed on the same date as the Judgment Note, reads, in part:

> "Atlantic 3 Construction Co., Inc. by its undersigned duly-authorized agent and Joseph Messa, Owner of Atlantic 3 Construction Co., individually, (collectively the "Employer") intending to be legally bound, has executed a Judgment Note for the benefit of the Local 8 Benefit Funds ("Benefit Funds") and the Local 8 Pension Fund ("Pension Fund," and jointly with Benefit Funds, "Funds") on this date."[17]

Messa signed the Warrant of Attorney in two places; for Atlantic 3 and "By: Joseph Messa."[18]  Messa admits he "placed his signature on Warrant of Attorney to Confess Judgment," but denies "that the Note provided that he was signing on his own behalf."[19]

On February 20, 2014, the execution date of the Judgment Note and Warrant of Attorney, Atlantic 3 paid $15,898.02 to the Union.[20] Upon receipt, Kilkenny applied the payment to the Total Debt and recalculated the amortization schedule to lower Atlantic 3's monthly payments to $4,624.84.[21]  The parties refer to the reduced monthly payments as the "revised payment plan" and "Revised Judgment Note;" however, the parties never signed the "revised Judgment Note."[22] On March 31, 2014, Atlantic 3 made the next scheduled payment due on April 1, 2014 in the amount of $4,624.84, the recalculated monthly payment.[23]

3

There is no record of Atlantic 3 making payments for May or June 2014. On June 19, 2014, the Union wrote to Messa notifying him of Atlantic 3's default, providing the opportunity to cure the default, and advising if May and June's payments are not received, the Union will take action to enforce the Judgment Note.[24]  Atlantic 3 paid $5,112.51 on August 13, 2014.[25] Messa did not respond to the June 19, 2014 letter and made no further payments to the Union.[26]

On January 30, 2015, Creditors filed a Complaint in Confession seeking judgment against Atlantic 3 and Messa.[27] When neither Atlantic 3 nor Messa responded to the Complaint, Creditors moved for an entry of default under Fed.R.Civ.P. 55(a).[28]  On August 31, 2015, the Court entered judgment for $36,643.96 against Atlantic 3 and Messa.[29]  On September 23, 2015, Messa moved to set aside the default judgment.[30]  Atlantic 3 did not move to set aside the default judgment.  We granted Messa's motion and vacated the default judgment as to Messa only.[31]

## II.   Analysis

On cross-motions for summary judgment, [32] the key question is whether there are genuine issues of material fact precluding Messa's personal liability.  Creditors argue the language of the Judgment Note and Messa's signature on the Warrant of Attorney evidence he personally guaranteed delinquent benefit contributions owed by Atlantic 3 to the Union's Funds. Messa argues the Judgment Note, although signed by him, does not make him personally liable for Atlantic 3's debt because he signed the Judgment Note as a corporate owner and not in his individual capacity.  In other words, he is not liable because the creditor inexplicably failed to include a signature line for him although the Judgment Note and Warrant to Confess Judgment specifically repeatedly confirm his personal liability. His challenge to these undisputed facts does not create a *genuine* fact issue for trial and we grant the Creditors' motion and deny Messa's motion.

4

## A. The Judgment Note confirms Messa's personal obligation.

We begin our analysis with the basic proposition of agency law "an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability."[33] There is no dispute Messa signed the Judgment Note "On Behalf of the Employer" Atlantic 3. If Messa acted on behalf of Atlantic 3, he is not personally liable on the obligation unless he "specifically agreed to assume liability." Under Pennsylvania law, "a person who is contracting as an agent may be found to be personally liable where [he] either executes a contract in [his] own name or 'voluntarily incurs a personal responsibility.'"[34] To make this determination, we turn to the language of the Judgment Note.

A fundamental rule of contract construction is "to ascertain and give effect to the intent of the contracting parties."[35] We derive the intent of the parties from the writing itself where the terms are clear and unambiguous.[36] Determinations of ambiguity of a contract and its interpretations are questions of law for the Court.[37] "A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction."[38] In making this determination, we assess the "writing as a whole and not in discrete units."[39]

Messa argues there is "no agreement" for his personal obligation to repay Atlantic 3's debt and he should not now be made liable for it. Messa argues the "Whereas" clause stating he "wishes to guarantee" Atlantic 3's debt is not part of the Judgment Note's operative terms and cannot be used to impose personal liability on him where the Note does not define what the term "guarantee" means, when and how it would apply, and does not evidence Messa's agreement to

repay Atlantic 3's debt. Messa further argues the Judgment Note does not clearly define the term "Employer," or where there are different definitions of "Employer," which definition should be applied.

In response, Creditors argue the "Whereas" clause is consistent with the operative terms of the Judgment Note and should not be read out of the agreement to render it meaningless, Messa signed the Warrant of Attorney individually, and the terms of Messa's liability are set out in the Warrant of Attorney, which refers back to the Judgment Note.

Considering the Judgment Note and Warrant of Attorney in its entirety, and giving effect to all of its language, we find no genuine issue of material fact Messa assumed a personal obligation to pay for Atlantic 3's delinquent contributions. The Judgment Note's first recital defines "Employer" as Atlantic 3; then, in the operative terms, collectively defines "Employer" as both Atlantic 3 *and* Messa who, "intending to be legally bound," "agree, jointly and severally," to the operative terms of the Judgment Note. The operative terms of the Judgment Note set out the amount to be repaid by Atlantic 3 and Messa to the Union's Funds, when and how such payments are to be made, and sets out the default procedure, including notice of default and opportunity to cure.[40] We find no ambiguity.

The Judgment Note represents Messa, as "Owner of the Employer," "wishes to guarantee this debt." We decline to read out the "Whereas" clause from the Judgment Note, as suggested by Messa. "General rules of contract construction advise against making any provisions of an agreement meaningless or superfluous, if the terms can be reconciled to avoid such an outcome."[41] The "Whereas" clause evidences the intent of the parties and does not contradict any operative terms.[42]

6

Paragraph 7 of the Judgment Note provides "Employer" – defined as Atlantic 3 and Messa – "will execute the Warrant of Attorney to Confess Judgment" to secure payment of the amounts owed to the Union's Funds. Consistent with paragraph 7, Messa signed the Warrant of Attorney on behalf of Atlantic 3 and himself individually, a fact he does not dispute. The Warrant of Attorney, consistent with the definition of "Employer" in the operative terms, binds both Atlantic 3 *and* Messa individually, evidences his intention to be legally bound upon the event of default, not timely cured, as defined in paragraph 4 of the Judgment Note. We find no genuine issue of material fact the Judgment Note and Warrant of Attorney, when read in entirety, personally obligates Messa on Atlantic 3's delinquent contributions.

### B. Messa's signing the Note and Warrant confirms his acceptance.

Messa argues he is entitled to summary judgment because he did not sign the Judgment Note in his individual capacity. Creditors argue Pennsylvania law does not require a separate signature line to hold a corporate officer personally liable, citing the general rule a corporate officer is not personally liable for a corporation's debt unless the officer expressly promises payment or voluntarily assumes liability.

For the reasons above, and applying the unambiguous language of the Judgment Note and Warrant of Attorney, we find Messa's signature on the Judgment Note and Warrant of Attorney confirms he accepted a personal obligation for Atlantic 3's debt. "The mere presence of the corporate name above the signature line does not exclusively indicate corporate liability."[43] In *Viso v. Werner*, the Pennsylvania Supreme Court considered the individual liability on a contract signed on behalf of a company. There, the contract was printed on letterhead of the defendant company, styled in the first person plural, and signed "Werner Contracting Co. By: s/Michael N. Werner."[44] Noting "a facial inspection of the contract would indicate that [Michael Werner,

7

individual defendant] was contracting on behalf of the disclosed principal, Werner Contracting Co.," the court nevertheless recognized:

> [T]he mere signature of the appellant preceded by the word 'by' and following the typed name of the corporation on the corporation's letterhead is not conclusive that he was acting in a representative capacity, *if the alleged contract showed an intent to bind appellant individually*.[45]

In *Estate of Duran,* the Pennsylvania Superior Court in reversing the trial court found, as a matter of law, the corporate agent intended to undertake a personal obligation by promising in the language of an unambiguous letter contract signed by him in his corporate capacity. He signed his name under the corporate name. The obligation in the contract included his personal obligation. Distinguishing *Viso,* the court found simply because the corporation benefitted from the contract on corporate letterhead did not preclude personal liability when the unambiguous language in the contract obligated the individual agent to meet a personal obligation and he signed the contract.[46]

We find the Judgment Note and Warrant of Attorney, signed by Messa, demonstrate an intent to bind Messa individually. There is no dispute Messa signed the Warrant of Attorney obligating both Atlantic 3 and Messa *individually* and *intending to be legally bound,* to a judgment. He cannot claim lack of knowledge or authority. He signed a judgment note which repeatedly referred to his personal liability and then, on the same day, signed a second commercial document confirming his personal liability to the extent of allowing the Creditors to confess judgment against him personally. As he undisputedly agreed to allow Creditors to confess judgment against him, we cannot find he did not assent to this personal obligation.

## III.  Conclusion

In the accompanying Order, we grant Creditors' motion for summary judgment, entering judgment in their favor and against Messa, and deny Messa's motion. Our holding is limited

only to this case where the creditor presents overwhelming undisputed facts regarding the corporate officer's personal obligation confirmed in two relatively brief and unambiguous commercial documents signed by an experienced business person. As in *Estate of Duran,* we are presented with a question of Pennsylvania law regarding ambiguity and find Messa's admitted signatures evidence his assent to his promises to personally pay the debt which results in personal liability.

---

[1]   Our Policies require movants file a Statement of Undisputed Material Fact ("SUMF") in support of a Fed.R.Civ.P. 56 motion, as well as a joint appendix of exhibits or affidavits ("J.A.").

[2]   The Funds are Plasterers Local 8 Health and Welfare Fund, Plasterers Local 8 Pension Fund, Plasterers Local 8 Annuity Fund, Plasterers Local 8 Vacation Fund, Plasterers Local 8 Industry Fund, and Plasterers Local 8 Joint Apprenticeship Fund.

[3]   While the caption refers to a "Thomas Kilkenny", the parties, and the record, refer to him as "Jim Kilkenny."

[4]   In his Answer to the Complaint, Messa admitted he "was the sole owner" of Atlantic 3, and denied Atlantic 3 "is still operating." *See* Answer at ¶ 3 (ECF Doc. No. 20). We entered default judgment against Atlantic 3 and Messa on August 31, 2015; only Messa moved to set aside the default judgment. Accordingly, Atlantic 3's liability is not at issue here. While the Creditors could have filed confession of judgment papers against Messa, they elected not to.

[5] Creditors' SUMF at ¶ 1 (ECF Doc. No. 24-1).

[6] J.A. 36-104 (ECF Doc. No. 25).

[7] Creditors' SUMF at ¶ 3.

[8] Creditors' SUMF at ¶ 5.

[9] Creditors' SUMF at ¶¶ 4, 6; Judgment Note J.A. 7-15.

[10] Creditors' SUMF at ¶ 6

[11] *See* Judgment Note J.A. 7–15.

[12] *Id.* at 7.

[13] *Id.*

[14] *Id.*; Creditors' SUMF at ¶ 7.

[15] J.A. 12.  When asked the meaning of the designation "PM" in reference to an earlier Judgment Note signed by Messa, but not at issue in this litigation, Messa testified "PM" stands for "Project Manager." J.A. 158-59.

[16] *See* Judgment Note at ¶ 7 (J.A. 9) and Warrant of Attorney at J.A. 13-14.

[17] J.A. 13.

[18] J.A. 13-14.

[19] Messa's Counter-Statement of Facts at ¶¶ 8-9 (ECF Doc. No. 28).

[20] Creditors' SUMF at ¶ 13; J.A. 114.

[21] J.A. 206; Creditors' SUMF at ¶ 12; Messa's Counter-Statement of Facts at ¶ 12.

[22] Creditors' SUMF at ¶ 12; Messa Counter-Statement of Facts at ¶ 12.

[23] Creditors' SUMF at ¶ 13; J.A. 115.

[24] J.A. 16-18.

[25] Creditors' SUMF at ¶ 13; J.A. 116.

[26] Creditors' SUMF at ¶¶ 17-18.

[27] ECF Doc. No. 1.

[28] ECF Docs. No. 5, 6.

[29] ECF Doc. No. 10.

[30] ECF Doc. No. 12.

[31] ECF Doc. No. 15.

[32] Our summary judgment analysis does not change when confronted with cross-motions for summary judgment. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir.2008). Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir.2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir.2014).

[33] *In re Estate of Duran*, 692 A.2d 176, 179 (Pa. Super. 1997) (quoting *Vernon D. Cox & Co., Inc. v. Giles*, 406 A.2d 1107, 1110 (Pa. Super. 1979)).

[34] *Id.* (quoting *Penn. Gas & Water Co. v. Nenna & Frain, Inc.*, 467 A.2d 330, 336 (Pa. Super. 1983)).

[35] *Chen v. Chen*, 893 A.2d 87, 93 (Pa. 2006) (quoting *Mace v. Atl. Refining Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001)).

[36] *Id.*; *see also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 92-93 (3d Cir. 2001) (analyzing Pennsylvania law); *Internazionale Graniti S.R.L. v. Monticello Granite Ltd.*, No. 07-1790, 2009 WL 2461803, at *2 (E.D. Pa. Aug. 12, 2009) (citing *Chen*, 893 A.2d at 93)).

[37] *In re Estate of Duran*, 692 A.2d at 179 (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)).

[38] *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 93 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir.1995) (applying Pennsylvania law)).

[39] *Accurso v. Infra-Red Servs., Inc.*, 23 F.Supp. 3d 494, 504 (E.D. Pa. 2014) (quoting *DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1143 (Pa. Super. 1987)).

[40] Judgment Note at ¶¶ 1-6 (J.A. 7-9).

[41] *Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2005 WL 2373866, at *5 (E.D. Pa. Sept. 27, 2005) (citing *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 94).

[42] *Wyeth Pharm., Inc. v. Borough of West Chester*, 126 A.2d 1055, 1062 (Pa. Commw. 2015) ("A contractual preamble can be a 'reliable indicator of intentions of the parties'") (quoting *Mercy Health Sys. of S.E. Pa. v. Metro. Partners Realty LLC*, No. 3046 Nov. Term 2001, 2005

WL 957722, at *5 (Phila.Ct.Com.Pl. Mar. 6, 2005)); *see also Pritchard v. Wick*, 178 A.2d 725, 728 (Pa. 1962) (considering "whereas" clause in the recital of the agreement as indication of the parties' intention).

[43] *In re Estate of Duran*, 692 A.2d at 170 (citing *Viso v. Werner*, 369 A.2d 1185, 1188 (Pa. 1977)).

[44] *Viso*, 369 A.2d at 1187.

[45] *Id.* (emphasis added).  The court in *Viso* ultimately found "no such intent appeared either in the written contract, or in the evidence proffered by the appellees at trial," and declined to find individual liability. *Id.* at 1188. *See also Taylor v. Creditel Corp.*, No. 04-2702, 2006 WL 166574, at *3-4 (E.D. Pa. Jan. 19, 2006) (applying *Viso* and *Estate of Duran* to issue of personal liability).

[46] *In re Estate of Duran,* 692 A.2d at 179-80; *see also McKee v. Moon*, 583 A.2d 5, 6 (Pa. Super. 1990) (affirming trial court's judgment against corporation's president individually based on language of contract and evidence at trial). While these Pennsylvania appellate courts reviewed credibility findings after trial, we are guided by the Pennsylvania Superior Court's more recent holding in *Estate of Duran* confirming the issues of ambiguity are questions of law and when, as in *Estate of Duran* and here, the contract is not ambiguous as a matter of law, we will address these issues as a matter of law. Both parties seemingly agree as they cross-moved for summary judgment without suggesting a need to evaluate disputed issues of fact.